| | | |
|---|---|---|
| SMITA A. PATEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19 C 3331 |
| v. | ) | |
| | ) | Judge Jenkins |
| LOUIS DeJOY, Postmaster General of the United States Postal Service, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Smita Patel claims that Postal Service failed to accommodate her disability for a six-month period. The Postal Service is entitled to summary judgment because once Patel provided the Postal Service with specific medical documentation, the Postal Service did not have an appropriate position. Because there is no evidence from which a reasonable jury could find that the Postal Service failed to accommodate her, the court should grant summary judgment to the Postal Service.

### Facts

Smita Patel, an Indian American, Hindu, female, with a knee injury and prior EEO activity, began working for the Postal Service in 1995. Defendant's Statement of Material Facts ("DSMF") ¶ 1. Patel worked at the Palatine Processing and Distribution Center as a supervisor of distribution operations (SDO). *Id.* As a supervisor, Patel managed her team of clerks' and mail handlers' work assignments, handled timekeeping, checked the mail, and took care of grievances. *Id.* Integral parts of the position include standing and walking. DSMF ¶ 2. Mobility is a "critical skill/ability necessary to perform these duties effectively," and "standing and walking are an integral part of

that position.  *Id.*  Patel reported to Brenda Valentine (acting manager of distribution operations), who reported to Charles Sciurba (acting plant manager).  *Id.*

Patel injured her knee in 2011, and she was off work for almost a year from June 2011 through May 2012.  DSMF ¶ 3.  Patel does not remember her diagnosis or how long her physician expected her to have the medical condition.  *Id.*  When she returned on May 24, 2012, Patel supervised on the first floor for about a month within her doctor's restrictions (no kneeling or squatting).  DSMF ¶ 4.  But a month after returning from her nearly-year-long absence, as of June 25, 2012, Patel called in and stopped reporting for duty.  *Id.*

A few days later, on June 29, 2012, Patel sent her doctor's new restrictions, including "no excessive twisting, turning, bending, sitting or standing; no kneeling or squatting; and frequent breaks while standing and/or walking."  DSMF ¶ 5.  Patel wrote at the top of the doctor's note: "Please let me know I can go to work or not if you agree with these restrictions . . . I do not want to go to work and come back, when they do not give me these restrictions."  *Id.*  That same day, Sciurba consulted with the Postal Service's Health and Resource Management and Labor Relations Department.  DSMF ¶ 6.  Sciurba concurred with these units that the Postal Service could not accommodate Patel's restrictions without clarification.  *Id.*  Sciurba sent Patel a letter requesting that her physician complete a form (CA-17) with all Patel's restrictions so that the Postal Service could try to identify appropriate work for her to do.  *Id.*  Patel was not to return to duty until the Postal Service had identified work within her restrictions.  *Id.*

Given the breadth of Patel's restrictions, the Postal Service did not have work for her and began the months-long process obtaining clarification from her doctor, including about the need for frequent breaks.  DSMF ¶ 7.  "Each case is evaluated based on that employee[']s restrictions, their job assignment and available work."  *Id.*

By July 10, 2012, Patel had not responded to the Postal Service's request for clarification of her June 28, 2012, restrictions. DSMF ¶ 8. The next day, Patel submitted a CA-17 and medical assessment for "limited duty" assignments. *Id.* On July 17, 2012, Yerdon mailed a letter to Patel informing Patel that her documentation was insufficient and requesting clarification on her CA-17. DSMF ¶ 9. On July 18, 2012, Luz Moreno, a member of the Postal Service's operations team, sent Patel's CA-17 and assessment to the occupational health nurse Judith Yerdon requesting clarification on the restrictions. *Id.*

The Postal Service received Patel's doctor's response on August 2, 2012. DSMF ¶ 10. When asked to clarify the "frequent breaks" he had initially said were necessary, Patel's physician stated in August 2012: "Frequent breaks are defined as non-repetitive work. This means patient may work with the work restrictions for a period of time. For example: patient may stand for 20 minutes, then walk for 20 minutes, then twist for 20 minutes, changing their job duties every 20 minute is varied activity." *Id.* The Postal Service was unable to locate work within these restrictions. DSMF ¶ 11.

On September 13th and 20th, Patel's physician provided another set of restrictions, which were the same as in July but then included a five-minute break every 20 minutes. DSMF ¶ 12. On October 15, 2012, Patel's physician updated the required break to one five-minute break every hour, with the use of a cane as needed, and some days off when the pain was terrible for her right knee. *Id.* On October 22, 2012, Patel's physician completed documentation for Patel's *left* knee in which he provided the same need for "frequent breaks," which the Postal Service had been unable to locate work within those restrictions. DSMF ¶ 13. The Postal Service received both of these documents on November 5, 2012. *Id.*

Patel was referred to the vocation rehabilitation program in December 2012 and began in early January 2013, and a limited-duty position was identified for her. DSMF ¶ 14. Moreno worked with the vocational rehabilitation specialist to determine if there was work for Patel within her restrictions. Patel was directed to return on January 18, 2013, but Patel did not return until January 23, 2013, for her limited-duty assignment. *Id.*

Patel acknowledged that a limited-duty assignment might alter her regular schedule of weekends off, and Patel accepted the position but noted her irritation with the offered position because it included working Saturday and Sunday. DSMF ¶ 15. Patel understood that with a limited-duty position that her usual bid for weekends off could be ignored in order to accommodate her; however, she wanted Saturday and Sunday off. *Id.* Patel accepted the limited-duty position on January 23. 2013, took sick leave on January 24-26, and returned to work on January 27, 2013. DSMF ¶ 16.

For the period where the Postal Service could not find a position within her restrictions, Patel wanted a position in the "leave control" (attendance) office, supervising employee attendance. DSMF ¶ 17. In order to make that happen, Patel wanted the supervisor in that office reassigned. *Id.* But beginning in 2008, Patel was barred from entering the attendance office where employee files were kept because she had accessed personnel files of other employees and copied them for her personal use. DSMF ¶ 18. Patel was given notice of this prohibition in 2008, but she claims that she did not read it until years later. *Id.*

Patel appealed the six-month period when the Postal Service could not find a position within her restrictions to the Merit Systems Protection Board. The MSPB determined that the position description for an SDO includes continuous walking and standing for eight hours per day

to check mail; thus, Patel's restrictions prevented her from performing the duties of her SDO position.  DSMF ¶ 19.

Patel filed an employment discrimination complaint in this court.  Ex. 1.  The Postal Service moved for summary judgment on Patel's two related cases (Nos. 19 C 3331 and 19 C 4336).  DSMF ¶ 20.  This court granted summary judgment on No. 19 C 4336 in full and on No. 19 C 3331 in part.  *Id.*  The only remaining claim before the court (in No. 19 C 3331) is Patel's failure-to-accommodate claim regarding the six-month period when Patel did not work but was still paid through OWCP.   *Id.*   The administratively accepted issue that is now before this court is: "Beginning on June 29, 2012, and continuing to January 24, 2013, management told [her] not to return to work until notified due to [her] medical restrictions."  DSMF ¶ 21. This court granted the Postal Service's summary judgment on this issue as to all Patel's claims (race, national origin, color, age, gender, retaliation) on this issue as well as her disparate treatment claim on this issue.  *Id.*  All that remains is whether the Postal Service failed to accommodate her disability for the six months while she was being paid through OWCP.

## Argument

The Postal Service is entitled to summary judgment on Patel's claim that the Postal Service failed to accommodate her disability for a six-month period.  Patel abandoned this claim by not disclosing it in her interrogatory responses, her initial disclosures, or at her deposition.  Further, Patel was not a qualified individual with a disability during those six months (because she could not perform the essential functions of her job with or without an accommodation, and the Postal Service did not fail to accommodate her.

In deciding this motion for summary judgment, the court should of course view all evidence in the light most favorable to Patel and draw all reasonable inferences in her favor.  *Shields v.*

*Dep't of Corrections*, 746 F.3d 782, 786 (7th Cir. 2014). But once the Postal Service has produced evidence to show that it is entitled to summary judgment, Patel must affirmatively demonstrate that a genuine issue of material fact remains for trial. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986), nor will the existence of "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

## I.     Patel Abandoned Her Failure-to-Accommodate Claim.

Patel abandoned her failure-to-accommodate claim, instead pursuing only her disparate-treatment claim as to this six-month period where the Postal Service could not find work that comported to her medical restrictions. Patel's complaint alleged many claims of discrimination (*e.g.*, race, age, color, national origin) as to this six-month period. When asked at deposition how she suffered discrimination when the Postal Service could not find work for her for the six-month period, Patel answered: "as an Indian-American, as a brown person, as a female, they didn't give me the work, but they gave all the other people work and I have a big loss of money because of that." Ex. 3 at 52-53. Patel did not testify that the Postal Service failed to accommodate her; instead, she relied on a disparate-treatment theory of disability discrimination. Additionally, the investigation of this issue sought information regarding Patel's alleged comparators. *See* Ex. 5 at 223, Q. 37; Ex. 4 at 103, Q. 21. Finally, neither Patel's initial disclosures nor her responses to interrogatories address any failure-to-accommodate claim. Ex. 22; Ex. 23. Thus, Patel abandoned any exhausted claim of failure to accommodate.

## II.     Patel's Accommodation Claim Fails.

Even if Patel did not abandon the claim, she cannot establish a failure to accommodate claim, which requires that she show: "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *Preddie v. Bartholomew Consolidated School Corp.*, 799 F3d. 806, 813 (7th Cir. 2015); *see also Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 852 (7th Cir. 2015). If the plaintiff establishes these elements of the prima facie case, the burden shifts to the employer to prove that the requested accommodation would impose an undue hardship. *Ford v. Marion Cnty. Sheriff's Office*, 942 F.3d 839, 850 (7th Cir. 2019). Patel is unable to prove the first and third required elements.

### A.     Not a "Qualified Individual"

Even if Patel did not abandon a failure to accommodate claim, she cannot present any evidence that she was a "qualified individual with a disability" during the relevant timeframe. A qualified individual is one who can perform the "essential functions" of her position, with or without a reasonable accommodation. *Tonyan v. Dunham's Athleisure Corp.*, 966 F.3d 681, 687 (7th Cir. 2020).

This first step to determine whether a plaintiff is a "qualified individual with a disability" is to determine whether the plaintiff has a disability, or more specifically, whether she has "a physical or mental impairment that substantially limits one or more of [her] major life activities." 42 U.S.C. § 12102(1)(A). To establish that she was a "qualified individual" with a disability, Patel must establish not only that she had a disability within the meaning of the Rehabilitation Act, but also that she was qualified for the job, *i.e.*, that she was able "to perform the essential functions of the job, with or without reasonable accommodation." 42 U.S.C. § 12111(8); *Jackson v. City of*

*Chicago*, 414 F.3d 806, 811 (7th Cir. 2005). Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Whether a function is essential to the position is a question of fact, resolved by "consider[ing] the employer's judgment, including written job descriptions, as evidence." *Tonyan*, 966 F.3d at 687. The court also examines the impact of not requiring the employee to perform the function. *Id*. at 688. Courts do not second-guess the employer's judgment on these calls, though this deference is not absolute. *Tonyan,* 966 F.3d at 687–88 (citing *DePaoli v. Abbott Labs.*, 140 F.3d 668, 674 (7th Cir. 1998)).

Patel fails on this first prong for two reasons. First, disability "does not include temporary medical conditions." *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999). "Intermittent, episodic impairments are not disabilities, the standard example being a broken leg. *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 543 (7th Cir. 1995). Patel nor her doctor indicated that her knee issue was permanent. Indeed, Patel returned with no restrictions to work earlier in 2012. Patel indicated that she did not know how long her doctor expected her to have this medical condition. Ex. 24 at 85, Q. 5. Patel cannot produce evidence of a permanent disability rather than a temporary medical condition; thus she was not covered by the Rehabilitation Act.

Second, Patel fails to meet this first element because she was unable to meet the requirements of her job (SDO) with or without a reasonable accommodation. Being able to stand and walk was an essential function of an SDO's job, duties that are continuous over an eight-hour shift. As Sciurba pointed out, walking and standing were an integral part of the position. Ex. 5 at 119, Q. 27-28. Patel could do neither continuously and thus could not perform the functions of an SDO. Ex. 6; Ex. 5 at 119, Q. 29. Additionally. Patel's doctor updated limitations in September 2012 to include a break every 20 minutes. Again, such restrictions prevented Patel from

performing the essential functions of her job. No accommodation would allow Patel to stand and walk continuously to oversee the mail processing. Ex. 5 at 119, Q. 27-28; Ex. 24 at 88 (Patel acknowledged that work within her restrictions was only available outside her regular SDO assignment).

Contrary to Patel's allegations here, the employer's judgment is considered as to what functions of a job are "essential." Furthermore, "if an employer has prepared a written description . . . , this description shall be considered evidence of the essential functions of the job." *Id*. Patel was not qualified because she could not show that she could perform her job's essential functions. The limitations included in Patel's doctor's notes prevented her from performing the job's essential functions, and as noted above, the Postal Service was not required to assign essential functions of her job to someone else. *Vargas* 980 F.3d at 1189–90. Patel was therefore not a "qualified individual" under the first prong.[1]

## B. The Postal Service Did Not Fail to Accommodate Patel.

Patel cannot meet the third prong of a failure-to-accommodate claim because there was no accommodation possible that would have permitted her to perform the functions of her job and, alternatively, because she was responsible for the breakdown of the interactive process.

First, there was no accommodation that would have allowed Patel to do the essential functions of her job. An employer need not create a new job or strip a current job of its main duties to accommodate a disabled employee. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 819 (7th Cir. 2004); *Gile v. United Airlines*, 95 F.3d 492, 499 (7th Cir. 1996); *see Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002) (no duty to reassign an employee to a

---

[1] Arguably Patel fails the second prong as well because while the Postal Service knew of her injury and restrictions, it did not know if her condition was permanent or temporary.

permanent light duty position). The Postal Service was not required to assign an essential function of Patel's job "to someone else. Employers need not reshuffle staff and resources if doing so would require reallocating an essential function from the plaintiff to another worker." *Vargas v. DeJoy*, 980 F.3d 1184, 1189–90 (7th Cir. 2020), citing *Peters v. City of Mauston*, 311 F.3d 835, 845-846 (7th Cir. 2002) (holding requested accommodation unreasonable because it would require another employee to perform an essential function of plaintiff's job: lifting and carrying). "Nor was the Postal Service obligated to create light duty work for [the plaintiff] where none existed." *Id.*, citing *Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000) (an employer need not "manufacture a job that will enable the disabled worker to work despite his disability.").

Moreover, Postal Service could not offer a position to Patel without understanding her restrictions. From June to August, the Postal Service repeatedly attempted to understand Patel's restrictions, including the requirement that she be allowed "frequent breaks," as described by her doctor. The Postal Service took the time to try to understand Patel's condition and consulted her doctor, but it did not have a position that met those restrictions. In September, Patel's doctor *added* restrictions, including a five-minute break every 20 minutes. This requirement of even more frequent breaks in addition to stringent restrictions on walking and standing (which the job required) made the SDO assignment impossible.

Patel testified that she wanted a position in the leave control office that would have accommodated her restrictions. Ex. 3 at 70-71. It seems that Patel raised this for the first time during the EEO investigation rather than when the Postal Service was evaluating her restrictions. Ex. 24 at 88, Q. 18 (requesting a position in leave control, "other offices," or "may be more places if looked."). Tellingly, Patel testified that she "could not recall" what management should have done instead of telling Patel not to return to work until notified. Ex. 24 at 91, Q. 28. Even if she

raised these options, there was an SDO assigned to leave control already, *id.*, and why would the employer accommodate one employee to avoid a lawsuit by displacing another employee and generating a different lawsuit?  In any event, this line of argument is merely academic because Patel was barred from working in that office because she previously accessed personal files, copying them for her personal use.  Ex. 3 at 143; Ex. 15 at 809, Q. 17.  (Assigning Patel to the office where she had committed Privacy Act violations would have been foolish.)  As to Patel's other after-the-fact suggestions for alternative assignments ("other offices" and "more places") is too vague to amount to real alternatives.

Importantly, an employer is not required to provide the exact accommodation requested. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 546 (7th Cir. 2008).  "It is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests."  *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000).  A disabled employee thus is entitled only to a reasonable accommodation and is not entitled to his preferred accommodation.  *Rehling v. City of Chicago,* 207 F.3d 1009, 1014 (7th Cir. 2000).

Though she was not qualified to perform her job as an SDO, Patel did have the option to show that she was qualified to perform the essential functions of another vacant position at the Postal Service.  *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017).  This too is part of a plaintiff's *prima facie* case, so it was her burden to prove that there was a vacant position for which she was qualified. *Id*.; *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1997).  Patel cannot carry this burden because she can offer no evidence that she could perform the essential functions of *any* vacant position at the Postal Service at the time, so a

reasonable jury could not conclude that the Postal Service discriminated against her by failing to reassign her.

Finally, Patel cannot present evidence that the Postal Service failed to engage in (or caused the breakdown of) the interactive process to identify reasonable accommodations for her disability. *Sansone v. Brennan*, 917 F.3d 975, 979–80 (7th Cir. 2019). Patel cannot show that she was qualified to perform her SDO job with accommodations, so any failure to engage in the interactive process is irrelevant. *See Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 293 (7th Cir. 2015). And because the interactive process is not an end in itself, the Seventh Circuit has held that the mere failure to engage in the process cannot give rise to a claim for relief. *Sansone*, 917 F.3d at 980; *Stern*, 788 F.3d at 292; *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001).

Even if the court evaluates the interactive process, the Postal Service engaged in the process but could not find work within Patel's restrictions. The Seventh Circuit repeatedly has held that finding a reasonable accommodation for a disabled employee is a *process*, not a one-off event. *E.g., E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005). The process begins with the employee, who has the initial duty to inform the employer of the disability and the desire for an accommodation. *Id.* The employer's obligation is then "'to engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances.'" *Id.* (quoting *Gile v. United Airlines, Inc.*, 212 F.3d 365, 373 (7th Cir. 2000)). The purpose of the interactive process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Sears*, 417 F.3d at 805 (citing 29 C.F.R. § 1630.2(o)(3)). The process is "a flexible give-and-take" between employer and employee "so that together they can determine what accommodation would enable the employee to continue working." *Sears*, 762 F.3d at 805. The Postal Service acted immediately upon

receiving Patel's restrictions, evaluated them, and found no position for her. The Postal Service also followed up with Patel's doctor to understand the further restrictions on frequent breaks. While it seems that Patel's suggestion that a position in leave control would accommodate her was made only during her EEO investigation, there was no vacant position there, and she could not work in that office anyway because of security concerns. *See Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996). The Postal Service engaged in the interactive process but it did not result in finding a position within Patel's restrictions.

In sum, Patel cannot meet the requirements of establishing a failure to accommodate claim. She was not a qualified person with a disability who could do the job with or without a reasonable accommodation, and the Postal Service could not accommodate her restrictions. The Postal Service was not required to change her job description, move another employee, or create a new position for Patel. The Postal Service is entitled to summary judgment.

## Conclusion

For the foregoing reasons, the court should grant summary judgment to the Postal Service.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: s/ Kathryn A. Kelly
    KATHRYN A. KELLY
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-1936
    kathryn.kelly@usdoj.gov