**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Smita A. Patel | |
| *Plaintiff,* | No. 19 CV 3331 |
| v. | Judge Lindsay C. Jenkins |
| Louis DeJoy, Postmaster General of the United States Postal Service, | |
| *Defendant.* | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Smita A. Patel ("Patel") is an Indian American, Hindu woman employed by the United States Postal Service (the "Postal Service"). Patel initiated this lawsuit in 2019 against Louis DeJoy[1], in his official capacity as Postmaster General for the United States Postal Service ("Defendant"), alleging employment discrimination based on race, color, religion, gender, national origin, disability, and retaliation. On December 22, 2022, the Court granted Defendant's motion for summary judgment on all claims, except her failure to accommodate claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* [Dkt. 66.]

Now before the Court is Defendant's second motion for summary judgment on the remaining failure to accommodate claim. [Dkt. 80.] For reasons discussed below, the motion is granted.

---

[1] When Patel filed the lawsuit, Megan J. Brennan served the as the United States Postmaster General. In May 2020, Louis DeJoy replaced Brennan as Postmaster General and was substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

## I.  Background

The following material facts are taken from the parties' Local Rule 56.1 statements and accompanying exhibits [Dkts. 82–87, 90-1, 91] and are undisputed except where a dispute is noted. The Court "present[s] the facts . . . in the light most favorable" to Plaintiff. *Emad v. Dodge Cty.*, 71 F.4th 649, 650 (7th Cir. 2023).

Patel, an Indian American, Hindu woman with a knee injury and prior EEO activity[2], began working for the Postal Service in 1995. [Dkt. 90-1 at 2, ¶ 1.] Patel worked at the Postal Service's Palatine Processing and Distribution Center as a supervisor of distribution operations (the "supervisor position"). [*Id.*] As a supervisor, Patel managed a team of clerks and mail handlers, managed their work assignments, handled timekeeping, checked the mail, and addressed grievances. [*Id.*] The Postal Service asserts that the supervisor position requires mobility, including walking and standing. [*Id.*, ¶ 2.] Patel disputes that walking and standing are integral to the supervisor position. [*Id.* at 3, ¶ 2.][3] Patel points to the Postal Service's written job description and argues that it does not describe walking or standing as a duty, responsibility, or function of her job. [*Id.*] During the relevant period (June 29, 2012 through January 24, 2013), Patel reported to Brenda Valentine ("Valentine"), acting

---

[2]    The parties did not define the term "prior EEO activity." In other cases brought by Patel, courts understood the term to mean that Patel had made complaints about her workplace at other times. [Dkt. 66 at n.5.]

[3]    Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

manager of distribution operations, who reported to Charles Sciurba ("Sciurba"), acting plant manager. [*Id.* at 2, ¶ 2.]⁴

Patel maintains that she has been disabled since December 2006 due to bilateral knee osteoarthritis. [*Id.* at 3, ¶ 3.] She asserts that her disability substantially limits several major life activities, including sitting, standing, walking, bending, or lifting. [*Id.* at 11, ¶ 4.] Patel maintains that from 2006 and 2012, she had work restrictions that included standing and walking, and the Postal Service offered Patel modified assignments to accommodate these restrictions. [*Id.*, ¶¶ 7–8.]

In 2011, Patel injured her left knee and was off work from June 2011 through May 23, 2012. [*Id.* at 3, ¶¶ 3–4; Dkt. 85 at 34–36 (Tr. 33:22–35:5) (explaining that she injured her left knee on the job and had a total knee replacement).] In her EEO Investigative Affidavit and deposition, Patel claimed that she did not remember her 2011 diagnosis or how long her physician expected her to be out. [Dkt. 90-1 at 3, ¶ 3.] On May 24, 2012, Patel returned to work and supervised on the first floor within her doctor's restrictions for about one month. [*Id.*, ¶ 4; Dkt. 85 at 37–38 (Tr. 36:21–37:15).] On June 25, 2012, Patel stopped reporting for duty because of her knee injury. [Dkt.

---

⁴ Citing to an EEO Investigative Affidavit from Charles Sciurba, Patel disputes that she reported to Valentine, asserting instead that she reported to Michelle Davis until her retirement on June 1, 2012. [Dkt. 90-1 at 3, ¶ 2.] In her Statement of Additional Material Facts, however, Patel admits that the relevant period for her failure to accommodate claim began on June 29, 2012 [*Id.* at 11, ¶ 9 ("Between June 29, 2012, and January 18, 2013, work was available for Plaintiff and her restrictions could be accommodated in her regular job as SDO.")], so the affidavit does not controvert Defendant's assertion that Patel reported to Valentine on June 29, 2012. [Dkt. 85 at 22–23 (Tr. 21:24–22:3); *see* Dkt. 87 at 37 (listing Valentine as one of her supervisors).]

90-1 at 3, ¶ 4.] Patel does not dispute this, but she says that on June 29, 2012, she was told not to return to work until notified due to her medical restrictions. [*Id.*]

On June 29, 2012, Patel sent the Postal Service a doctor's note with new restrictions. [*Id.*, ¶ 5.] The restrictions included no excessive twisting, turning, bending, sitting, or standing; no kneeling or squatting; and frequent breaks while standing and/or walking. [*Id.*] Patel handwrote a note at the top of the doctor's note before submitting it to the Postal Service: "Please let me know I can go to work or not if you agree with these restrictions . . . I do not want to go to work and come back, when they do not give me these restrictions." [*Id.*]

That same day, Sciurba consulted with the Postal Service's Labor Department and Health and Resource Management experts. [*Id.* at 4, ¶ 6; Dkt. 86 at 15.] Sciurba "concurred on the decision that [the Postal Service] could not accommodate Ms. Patel's updated restrictions" without clarification. [Dkt. 90-1 at 4, ¶ 6.] To help identify suitable work for Patel, Sciurba sent Patel a letter requesting that her physician complete a form (CA-17) with all of her restrictions. [*Id.*] According to the Postal Service, given the extent of her restrictions, it did not have work for Patel and began a "months-long process" of seeking clarification from Patel's doctor, including the need for frequent breaks. [*Id.*, ¶ 7.]

Patel disputes whether work within her restrictions was available at the facility. In support, she points to Sciurba's December 16, 2014 affidavit where he stated that "insufficient medical documentation and a clear understanding of [Plaintiff's] limitations was the only reason she was not returned to work on 6/29/12."

4

[*Id.*, ¶ 6; Dkt. 86 at 9.] She also cites to Sciurba's statement that "once proper documentation was provided by her medical provider, we agreed we had available work and could accommodate her restrictions in her regular job as Supervisor Distribution Operations." [Dkt. 90-1 at 4, ¶ 6.] Patel also contends that the Postal Service did not conduct a work search at any time after June 29, 2012. [*Id.*]

Patel did not respond to the Postal Service's request for clarification as to her June 2012 restrictions until July 11, 2012, when she submitted a CA-17 and medical assessment for "limited duty" assignments. [*Id.* at 5, ¶ 8.] Patel was informed that her documentation was insufficient and required further clarification. [*Id.*] On August 2, 2012, Patel sent the Postal Service her doctor's response. [*Id.*, ¶ 10.] Her doctor wrote that frequent breaks were defined as non-repetitive work. [*Id.*] Her doctor explained that "[t]his means patient may work with the work restrictions for a period of time. For example: patient may stand for 20 minutes, then walk for 20 minutes, then twist for 20 minutes, changing their job duties every 20 minutes is varied activity." [*Id.*] The Postal Service maintains it was unable to locate work with these restrictions. [*Id.*, ¶ 11.] As noted above, Patel disputes this, arguing that the Postal Service did not conduct a work search any time after June 29, 2012. [*Id.*]

On September 13 and again on September 20, 2012, Patel's doctor provided updated work restriction forms, which were the same as the July 2012 restrictions, but this time they included a five-minute break every 20 minutes. [*Id.* at 6, ¶ 12.] On October 15, 2012, Patel's doctor modified the required break to one five-minute break every hour, using a cane as needed, and some days off when the pain was terrible for

her right knee. [*Id.*] A week later, on October 22, 2012, Patel's doctor completed another work restriction form; this time for Patel's left knee with the same need for frequent breaks. [*Id.*, ¶ 13.] The Postal Service did not receive the October 15 and October 22 work restriction forms until November 5, 2012. [*Id.*]

In December 2012, the Postal Service referred Patel to their vocational rehabilitation program. [*Id.*, ¶ 14.] Luz Moreno ("Moreno"), an operations team member, worked with the vocational rehabilitation specialist to identify a limited-duty position that would accommodate Patel's restrictions. [*Id.*] On January 18, 2013, Moreno instructed Patel to return to work for her limited-duty assignment, but she did not return to work until January 23, 2013. [*Id.*, ¶ 14.] Patel acknowledged that a limited-duty assignment might alter her regular schedule of weekends off, and that bids for weekends off could be ignored in order to accommodate her. [*Id.* at 7, ¶ 15.] Patel expressed dissatisfaction with her new schedule because she no longer had, but still wanted, weekends off. [*Id.*] After returning to work in the limited-duty position, Patel took sick leave on January 24 through January 26, and returned to work on January 27, 2013. [*Id.*, ¶ 16.]

During the period when the Postal Service was unable to find work within her restrictions, Patel wanted a position in the "leave control" office (or the attendance office), supervising employee attendance. [*Id.*, ¶ 17.] According to the Postal Service, in order to get this position, Patel wanted the supervisor in that office reassigned, though Patel disputes this. [*Id.*] At her deposition, Patel testified that "the supervisor can be moved anywhere any time. So if they want to move me, they could move

6

somebody else, too." [*Id.*] Patel also testified that other supervisors were given positions in the attendance office, even when there was no open position or they were assigned to a different tour.[5] [*Id.*] The Postal Service also claims there is another reason why Patel could not work in the attendance office: in 2008, Patel was barred from entering the attendance office where employee files were kept because she had accessed personnel files of other employees and copied them for her personal use. [*Id.* at 7–8, ¶ 18.][6] Patel disputes that she accessed personnel files in the attendance office, but she does not deny that the Postal Service has prohibited her from entering the attendance office. [*Id.*; Dkt. 85-1 at 39 (Tr. 138:11–139:15).]

Patel filed an appeal with the Merit Systems Protection Board ("Board") to contest the six-month period during which the Postal Service says it was unable to find a position that would accommodate her restrictions. [Dkt. 90-1 at 8, ¶ 19.] After reviewing Patel's supervisor job description, the Board determined that it included continuous walking and standing for eight hours a day. [*Id.*] The Board concluded that Patel's restrictions prevented her from performing her regular job duties and responsibilities. [*Id.*] Citing the written job description, Patel asserts that the job description does not describe walking or standing as a duty, responsibility, or function of the job. [*Id.*]

---

[5] The parties do not define the term "tour," but the Court understands the term to mean a shift.

[6] In 2008, the Postal Service gave Patel notice of the prohibition, but she claims that she did not read the notice until years later. [Dkt. 90-1 at 8, ¶ 18.]

On October 13, 2012, Patel filed a complaint with the EEOC. [Dkt. 1 at 9 (copy of EEOC appeal).] After investigating, on July 12, 2017, an EEOC Administrative Judge issued a decision finding there was no discrimination, and the Postal Service issued a final order adopting the AJ's finding of no discrimination eight days later. [*Id.* at 10.] Patel appealed to the EEOC's Office of Federal Operations, which affirmed the Postal Service's final order on February 12, 2019. [*Id.* at 10–11.] This case followed.[7]

As previously explained, the administratively accepted issue that remains in this case concerns whether, beginning on June 29, 2012 and continuing to January 24, 2013, management told Patel not to return to work until she was notified due to her medical restrictions. [Dkt. 90-1 at 8–9, ¶ 21.]

## II.   Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party."

---

[7]      Patel also filed a second employment discrimination lawsuit against Postal Service in Case No. 19-cv-4336. The Court granted Defendant's motion for summary judgment in that case in full. [*Id.*]

8

*Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). The Court "'may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.'" *Johnson v. Rimmer*, 936 F.3d 695, 705 (7th Cir. 2019) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence, it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dept' of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A party opposing summary judgment must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 322). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

## I. Analysis

### A. Abandonment

As a preliminary matter, the Postal Service contends that Patel abandoned her claim under the ADA because she did not raise a failure to accommodate her disability when she was asked about the discrimination she suffered in her deposition, nor did she raise it in her interrogatory responses or initial disclosures. [Dkt. 81 at 6.] It is true that Patel did not use the term "failure to accommodate" in discovery. [Dkt. 85 at 33–50 (testifying generally about restrictions, accommodations, and limited-duty assignments); *see also* Dkt. 87 at 42.] But Patel initiated this action *pro se* and she did not retain counsel until long after discovery concluded. [Dkt. 74.] Both the Supreme Court and the Seventh Circuit have repeatedly reminded district courts that "document[s] filed *pro se*" must be "'liberally construed'"—in recognition of the fact that *pro se* litigants lacking formal legal education should "'be held to less stringent standards than . . . lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Millikan v. Town of Ingalls*, 2022 WL 3928516, at *1 (7th Cir. Aug. 31, 2022) ("We construe *pro se* briefs liberally.") And the Court prefers to decide cases on the merits, not on technicalities, so it will proceed to the merits of her claim.

### B. Failure to Accommodate Under the ADA

Patel alleges that the Postal Service violated the ADA when it failed to find a reasonable accommodation for her to be able to work between June 2012 through January 2013. [Dkt. 1 at 4–5 (checking off the box stating that the defendant "failed to reasonably accommodate the plaintiff's disabilities" on the form complaint and

alleging that, "Mgt denied to provide work for injured on the job employee, myself. . . . Also USPS has obligation to give wor[k] to injured on the [job] employee[s]. The mgt instructed to me, do not return to work until notified. . . . mgt did not accommodate me.").] The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The statute expressly defines "discrimination" to include, among other things, an employer's failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless" doing so "would impose an undue hardship on the operation of" the employer's business. 42 U.S.C. § 12112(b)(5)(A); *see also Brown v. Milwaukee Bd. of Sch. Dir.*, 855 F.3d 818, 820 (7th Cir. 2017). The ADA defines a disability as: (a) a physical or mental impairment that substantially limits one or more major life activities of the individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

A *prima facie* failure to accommodate claim consists of three elements. The plaintiff must prove (1) that she "is a qualified individual with a disability;" (2) that the defendant "was aware of her disability;" and (3) that the defendant "failed to reasonably accommodate the disability." *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)). The first of these elements can be broken down further into two distinct issues—first, whether an employee is disabled and second, whether an

11

employee is a qualified individual. Accordingly, Plaintiff's *prima facie* case is best understood as consisting of four elements.

The Postal Service tacitly concedes that it was aware of Patel's disability under the second element.[8] Instead, it argues that summary judgment is appropriate because Patel cannot establish that she was a qualified individual, and because she cannot establish that the Postal Service failed to reasonably accommodate her disability. For the reasons explained below, the Court agrees that Patel has failed to show that she was a qualified individual who was entitled to an accommodation.

As to the first element, the Postal Service maintains that Patel was not a "qualified individual with a disability" within the meaning of the ADA because has a temporary medical condition, and that "intermittent, episodic impairments," do not qualify as disability. [Dkt. 81 at 8 (citing *Waggoner v. Olin Corp.*, 169 F. 3d 481, 484 (7th Cir. 1999).] This argument appears to be premised on a prior version of the ADA. Since Patel complains of employment discrimination that occurred "after January 1, 2009, the 2008 amendments to the ADA, which expanded the Act's coverage, apply to [her] claim." *Gogos v. AMS Mechanical Systems, Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (citing ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553). *See also Bob–Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp. 3d 854, 880 (N.D.

---

[8]     Defendant halfheartedly suggests that Patel arguably fails to prove this element "because while the Postal Service knew of her injury and restrictions, it did not know if her condition was permanent or temporary." [Dkt. 81 at 9 n.1.] But the record indicates otherwise. From 2006 to 2012, Patel provided the Postal Service with doctor's notes and work restriction forms, one of which stated that Patel suffers from bilateral knee osteoarthritis and was disabled. [Dkt. 90-1 at 13–30.] Defendant also accommodated Patel's disability prior to her 2011 knee injury. [*Id.* at 33–35.]

Ill. 2014) ("Notably, the ADA was amended in 2008 to make the standard for qualifying as disabled more inclusive."); *Love v. Board of Education of City of Chicago*, 2020 WL 247378, at *4 (N.D. Ill. Jan. 16, 2020).

The term "disability" is to be "construed in favor of broad coverage of individuals under [the ADA], to the maximum extent permitted" by its terms. 42 U.S.C.§ 12102(4)(A). Prior to the 2008 amendment, "[i]ntermittent, episodic impairments [were] not disabilities, the standard example being a broken leg." *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995). But as the Seventh Circuit recognized in *Gogos*,

> Under the 2008 amendments, a person with an impairment that substantially limits a major life activity, or a record of one, is disabled, even if the impairment is "transitory and minor" (defined as lasting six months or less). *See* [42 U.S.C.] § 12102(3)(B) (Only paragraph (1)(C) of the definition of disability "shall not apply to impairments that are transitory and minor."); 29 C.F.R. § 1630.2(j)(1)(ix). Likewise, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

737 F.3d at 1172–73. Similarly, the Interpretative Guidance to the regulations promulgated under the 2008 amendments explains that "an impairment does not have to last for more than six months in order to be considered substantially limiting under the first or the second prong of the definition of disability." 29 C.F.R. Pt. 1630, App. ("Section 1630.2(j)(1)(ix) Effects of an Impairment Lasting Fewer Than Six Months Can Be Substantially Limiting"); *see also Modjeska v. UPS*, 54 F. Supp. 3d 1046, 1060–61 (E.D. Wis. 2014) ("[W]hile a temporary impairment may not have been considered a disability prior to 2009, the regulations [post-amendment] provide that

13

'[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.'").

Given that "Congress did not intend for the threshold question of disability to be used as a means of excluding individuals from coverage," 29 C.F.R. Pt. 1630, App., discrimination claims have been routinely allowed to proceed under comparable facts. *See, e.g., Bob-Maunuel*, 10 F. Supp. 3d at 881 (rejecting the argument that "a hernia is a temporary impairment that can be resolved with surgery [and] it cannot be substantially limiting"); *Love*, 2020 WL 247378, at *4 (holding that plaintiff adequately pleaded that her "torn rotator cuffs" impaired the major life activity of "lifting" and she was therefore disabled under the ADA); *Quinn v. Chicago Transit Auth.*, 2018 WL 4282598, at *7 (N.D. Ill. Sept. 7, 2018) (concluding that an allegation that plaintiff had "limited use" of his left hand and a restriction against lifting more than twenty pounds pled a plausible basis for finding a record of an impairment that substantially limited a major life activity); *Jenkins v. Chicago Transit Auth.*, 2017 WL 3531520, at *5 (N.D. Ill. Aug. 17, 2017) (allegations that plaintiff's foot was fractured, that a doctor prescribed "limited" walking, and that she was required to wear a therapeutic boot were sufficient to "suggest a plausible claim that [plaintiff's] walking was substantially limited such that she would be considered disabled").

Here, there is sufficient evidence to permit a reasonable jury to find that Patel has a disability within the meaning of the ADA, even if her knee conditions are temporary. Patel testified at her deposition that her knee injuries substantially interfered with her ability to walk or stand. [*See* Dkt. 85 at 39 (Tr. 38:3–14) ("There

14

was too much walking for me and [the supervisor] didn't let me go home because I told him that I cannot . . . walk that much the whole night for eight hours, but he forced me to do it and after all that doing eight hours my knee was swollen and everything.").] An individual's own claims that her condition substantially interfered with her ability to perform major life activities can be sufficient to support a claimed disability. *Rowlands v. United Parcel Serv. Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018) (concluding that plaintiff's claim that her knee injuries substantially interfered with her ability to walk, stand, squat and kneel was sufficient to support a claimed disability.)

Alternatively, the Postal Service argues that Patel was not a "qualified individual" under the first element and, therefore, was not entitled to an accommodation. Because Patel "bears the burden of proof on this issue," to survive summary judgment, she must "come forward with evidence" that would permit a reasonable jury to conclude that she is "a 'qualified individual'" under the statute. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996); *see also Celotex Corp*, 477 U.S. at 322–23.

An employee is a "qualified individual" if she "can perform the essential functions of the employment position that [she] holds or desires," "with or without reasonable accommodation." *Kotwica*, 637 F.3d. at 748 (quoting 42 U.S.C. § 12111(8)). The phrase "essential function" is a legal term of art that denotes those tasks so inherent in the nature of a position that a disabled employee's inability to perform them with the aid of reasonable accommodation justifies the employer in

15

disqualifying that employee from holding that position. *See* 29 C.F.R. § 1630.2(n)(1) ("The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires."). In other words, although the ADA charges employers with an exacting obligation to adapt the workplace to the needs of disabled employees, some abilities may be required of all employees—disabled or otherwise—and a disabled employee may not demand that the employer dispense with that requirement as an accommodation. *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017).

Whether a given task is an essential function is ultimately a "factual question, *not* a question of law." *Tate v. Dart*, 51 F.4th 789, 794 (7th Cir. 2022) (quoting *Brown v. Smith*, 827 F.3d 609, 613 (7th Cir. 2016)) (emphasis original to *Brown*). The regulations "identify seven non-exclusive categories of evidence" relevant to this determination, *Tate*, 51 F.4th at 794, including:

    (i)  The employer's judgment as to which functions are essential;

    (ii)  Written job descriptions prepared before advertising or interviewing applicants for the job;

    (iii)  The amount of time spent on the job performing the function;

    (iv)  The consequences of not requiring the incumbent to perform the function;

    (v)  The terms of a collective bargaining agreement;

    (vi)  The work experience of past incumbents in the job; and/or

    (vii)  The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

16

"A 'reasonable accommodation' is one that allows the disabled employee to 'perform the essential functions of the employment position.'" *Severson*, 872 F.3d at 481 (quoting 42 U.S.C. § 12111(8)). If no accommodation would enable an employee to perform the essential functions of her position, she is not a qualified individual under the statute and not entitled to accommodation within that position. *Id*.

At the crux of the parties' dispute is whether the ability to stand and walk are essential functions of the supervisor position. The Postal Service maintains that standing and walking is an integral part of the job, and that no accommodation to the supervisor position "would allow Patel to stand and walk continuously to oversee the mail processing." [Dkt. 81 at 9.] Patel contends that the written job description does not include walking or standing as a function of the job. Looking to the seven categories of evidence identified by 29 C.F.R. § 1630.2(n)(3), the evidence in the record fully supports the assertion that the ability to walk and stand is an essential function of the position.

First, Defendant's "judgment" that walking or standing is an essential function is entitled to some a "degree of deference." *Tate*, 51 F.4th at 794. The court "presume[s] that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." *Conners v. Wilkie*, 984 F.3d 1255, 1261–62 (7th Cir. 2021) (quoting *Gratzl v. Off. of the Chief Judges of the 12th, 18th, 19th, & 22nd Judicial Cirs.*, 601 F.3d 674, 679 (7th Cir. 2010). Sciurba's December 28, 2012 EEO Investigative Affidavit described the physical skills and abilities required to perform the supervisory position, which

17

included overseeing roughly 10 DBCS machines and a manual breakup unit while coordinating with multiple operators. [Dkt. 86 at 16.] He explained that Patel also was responsible for processing mail on time, meeting service expectations, meeting productivity targets, monitoring employee productivity, and monitoring mail flows to meet service and operational targets. [*Id.*]

Second, according to the written job description, the duties and responsibilities include, among other things: "[s]upervis[ing] a medium sized group of employees engaged in mail process and distribution activities"; "[s]chedul[ing] and assign[ing] work; determin[ing[ priorities; shift[ing] employees during the course of the tour as the workload fluctuates"; "[c]oordinat[ing] mail flow activities with other supervisors on the tour"; and "[m]eet[ing] with customers and major mailers on a regular basis to resolve problems and/or improve service." [Dkt. 90-1 at 31–32.]. Although this description does not explicitly mention "walking" or "standing," it implies that both are necessary for the job and required for prolonged periods.

The "reality on the ground" underscores the importance of walking or standing. *Tonyan v. Dunham's Athleisure Corp.*, 966 F.3d 681, 688 (7th Cir. 2020); *see also* 29 C.F.R. § 1630.2(n)(3)(iii)–(iv), (vi). At her deposition, Patel testified that the supervisory position required prolonged periods of walking and standing. [Dkt. 86 at 37 (Tr. 36:18–20) (Q: And you supervised the DBCS machines in the manual unit? A: Yes; Q: But you had to walk and stand to supervise the folks in those two areas? A: Yes.).] She also testified about the physical demands of the position. [*See* Dkt. 85 at 39 (Tr. 38:3–14) ("[The supervisor] told me to work on the first floor, the whole first

floor, and *there was too much walking for me* . . . I told him that I cannot [ ] walk that much the whole night for eight hours . . . When I [saw my] doctor, that's what they wrote the restriction again on, I think, June 29th.") (emphasis added).] In light of this practical reality, the requirement that the supervisor position requires walking and standing appears eminently reasonable.

Because the record supports Defendant's judgment that walking and standing are essential, and because Patel has not come forward with evidence calling that judgment into question, the Court holds that the ability to walk and stand is, in fact, an essential function of the supervisor position. It is undisputed that Patel's medical restrictions from June 2012, as well as the updated restrictions from September and October 2012, included no excessive standing, and frequent breaks while standing and/or walking, thus preventing her from performing essential functions of the position. [Dkt. 90-1 at 3–6, ¶¶ 5, 12–13; *see also id.* at 11, ¶ 4 ("Plaintiff's disability substantially limits several major life activities, including sitting, standing, walking, bending, or lifting.")] As such, she was not a "qualified individual" with respect to the supervisor position and this theory of ADA liability must fail.

The Court also agrees that Patel has failed to set forth evidence that she was denied a reasonable accommodation. The Postal Service maintains that, according to Patel's supervisor Sciurba, there was no available work to accommodate Patel's restrictions. [*Id.* at 5, ¶ 11.] Patel's only argument in response is that in 2014, Sciurba suggested in an affidavit that "once proper documentation was provided" "management agreed that work was available and her restrictions could be

accommodated" for the supervisor position. [Dkt. 90 at 8 (also noting that Sciurba said "[i]nsufficient medical documentation and a clear understanding of [Plaintiff's] limitations was the only reason she was not returned to work on 6/29/12.").]

Assuming Sciurba had conveyed his expectation that Patel's restrictions could be accommodated, this fact alone would not permit a reasonable jury—without more—to find that Patel was denied a reasonable accommodation. As noted above, it is Patel's burden to prove—through more than mere speculation or conjecture—that a vacant position existed. *Severson*, 872 F.3d at 482. She has not done so, other than to suggest that she might have been placed in the leave control position. But this job was not an option. It is undisputed that the leave control position was not vacant during the relevant period, and Patel does not dispute that beginning in 2008, she was barred from entering the attendance office. [Dkt. 90-1 at 7–8, ¶¶ 17–18.] Therefore, the Postal Service was under no obligation to reassign Patel there. *See Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 291 (7th Cir. 2015) ("An employer may be obligated to reassign a disabled employee, but only to vacant positions"); *King v. City of Madison*, 550 F.3d 598, 600 (7th Cir. 2008) ("[E]mployers are not required to reassign a disabled employee to a position when such a transfer would violate a legitimate, nondiscriminatory policy of the employer.").[9]

---

[9] The Court need not address the parties' arguments regarding failure to engage in an interactive process to discuss a reasonable accommodation. "Failure of the interactive process is not an independent basis for liability under the ADA." *Severson*, 872 F.3d at 480 n.1 (citing *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1059 n.1 (7th Cir. 2014)). This inquiry does not come into play absent a determination that a reasonable accommodation was available. *See* 42 U.S.C. § 12112(b)(5)(A).

Because Patel fails to show any genuine issue of material fact as to whether she was a qualified individual under the ADA or that the Postal Service failed to reasonably accommodate her disability, her remaining claim cannot survive summary judgment.

### III.    Conclusion

For these reasons, Defendant's motion for summary judgement is granted. Judgment is entered in favor of Defendant and against Plaintiff on the remaining count of the complaint.

Enter: 19 cv 3331
Date:  October 20, 2023

_____
Lindsay C. Jenkins
United States District Judge